[No. B077680. Second Dist., Div. Six. Nov. 28, 1994.]

ALBERT COHAN et al., Plaintiffs and Appellants, v.
CITY OF THOUSAND OAKS et al., Defendants and Respondents.

**COUNSEL**

DiJulio & King, R. David DiJulio, Lascher & Lascher, Wendy C. Lascher and Susan B. Lascher for Plaintiffs and Appellants.

Mark G. Sellers, City Attorney, Rutan & Tucker and Philip D. Kohn for Defendants and Respondents.

## OPINION

**STONE (S. J.), P. J.**—Appellants spent 15 years attempting to develop a parcel of real property in the City of Thousand Oaks (City). After many denials of their applications and modification of the plans, the planning commission finally approved the proposed subdivision map and development applications with the imposition of approximately 500 conditions. The city council (Council) appealed the decision to itself and, after a public hearing, overruled the planning commission's decision. We hold that a series of errors by the Council denied appellants both procedural and substantive due process.

Albert Cohan, Nedjatollah Cohan and Lida Cohan appeal from a ruling of the Ventura County Superior Court denying their petition for writ of mandate. They contend that: 1) the Council violated numerous procedural and due process safeguards in purporting to "appeal" the planning commission's decision; 2) the meeting during which the Council granted its own appeal did not afford appellants a meaningful hearing; 3) the resolution adopting the Council's decisions of July 28, 1992, was untimely and thus void, and 4) the errors were not harmless.

### FACTS

Appellants own 47 acres of land in the City which they have been attempting to develop for 15 years. The property is in a semirural area and located in a single-family residential neighborhood. Appellants filed a proposal for a large development, consisting of 26 single-family detached homes, 144 units of multifamily condominiums, and a neighborhood shopping center with a 117,600 square feet structure. The planning commission finally approved their proposed subdivision map and development applications at a public hearing of June 29, 1992, with imposition of approximately 500 conditions.

The end of the appeal period of the planning commission's decision on the subdivision map was July 10, 1992. A staff memorandum to the Council indicated that if no appeal were filed, only the permit for oak tree removal would come before the Council. At the July 7, 1992 Council meeting, several citizens spoke against appellants' project during the "Public Concerns" portion of the meeting and requested that the Council appeal the planning commission's decision. Letters from other citizens against the

project and requesting that the Council appeal the decision arrived after the agenda was posted July 3, 1992. The Council voted to waive the 72-hour notice provision of the Ralph M. Brown Act (Brown Act) (Gov. Code, § 54954.2)[1] and add the appeal matter to the agenda pursuant to section 54954.2, as a matter of urgency.

After discussion, the Council voted to have the subdivision and associated building entitlements appealed to the Council and heard at the same time the oak tree permit was before the Council. Appellant Albert Cohan was present at the July 7 meeting and agreed to a hearing date of July 28, 1992.

July 28, 1992, the Council conducted a noticed public hearing and heard the appeal of the planning commission decision. Approximately 20 residents attended the hearing and either spoke against or submitted statements opposing the project. Appellants and their attorney also attended and spoke at the hearing. After a six-hour hearing, the Council voted to certify the environmental impact report, grant the appeal which denied appellants' project without prejudice, and deny the oak tree permit. The Council recessed in August, and on September 15, 1992, adopted conforming resolutions.

September 11, 1992, appellants filed a combined petition for writ of mandate and complaint for violation of civil rights. The complaint, as amended, alleged violations of the Brown Act (§ 54950 et seq.), improprieties with respect to the City's appellate procedures, failing to render a timely appellate decision, violation of appellants' civil rights under 42 United States Code section 1983, inverse condemnation, improper failure to deem the development project approved, improper adoption of a resolution disapproving the project, failure to comply with vesting tract map regulations, and failure to adopt certain wetland findings.

At the hearing on appellants' petition, the trial court found that the Council had failed to comply with its own code and California statutory law. In particular, it found that the Council's attempt to appeal the planning commission decision was improper and thus void, because 1) no written filing of an appeal ever occurred; 2) there was no "urgency" allowing the Council to circumvent notice provisions of the Brown Act; and 3) the Council is not a "person" who may bring an appeal.

The court, nonetheless, concluded that the July 28 hearing was proper and that the Council's decision on appeal was adequate, although late. The court found that "it is probable, that, had the City Council taken no action on July 7, 1992, one or some of the large number of interested parties present would

---

[1] All statutory references are to the Government Code unless otherwise indicated

have filed the appropriate written notice of appeal and the hearing would have been conducted on approximately the same date with essentially the same outcome." Consequently, the court concluded that all the errors were harmless and denied appellants' request to vacate the actions of the Council. This appeal ensued.

DISCUSSION

### 1. Appealability

■ Appellants request that we treat their appeal as a writ of mandate in light of *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725 [29 Cal.Rptr.2d 804, 872 P.2d 143], since the trial court's ruling disposed of only some of the causes of action. Respondents assert that the ruling constitutes a final judgment and that appellants must be deemed to have waived any causes of action not ruled upon. They cite the recent case of *Nerhan* v. *Stinson Beach County Water Dist.* (1994) 27 Cal.App.4th 536 [33 Cal.Rptr.2d 10], for the proposition that absent unusual circumstances, the denial of a petition for writ of mandate is not appealable if other causes of action remain pending between the parties. We disagree. The trial court specifically stated that its ruling "is in no way intended as a ruling on any of the substantive issues remaining in this lawsuit." The trial court did not rule on the violation of civil rights claim or inverse condemnation cause of action. Nor did appellants have the opportunity to present evidence on the taking issue. (See *Hensler* v. *City of Glendale* (1994) 8 Cal.4th 1, 16 [32 Cal.Rptr.2d 244, 876 P.2d 1043].)

Judicial economy would not be served by awaiting the outcome of the trial on the other causes of action if a procedural violation raised in an improvident appeal required reversal of the trial court's ruling. (*Morehart* v. *County of Santa Barbara, supra,* 7 Cal.4th 725, 746; *Olson* v. *Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720].) The briefs and record contain all the elements prescribed for original mandate proceeding and there is no indication that the trial court as respondent would want to appear separately. (*Morehart, supra,* at p. 745.) We do not believe that *Nerhan* v. *Stinson Beach County Water Dist., supra,* 27 Cal.App.4th 536, precludes our finding unusual circumstances under *Morehart* to treat the appeal as a writ petition. Consequently, we shall exercise our power to treat the purported appeal as a petition for writ of mandate. (*Morehart, supra,* at pp. 746-747.)

### 2. Adequate Notice and Due Process

Appellants assert that the Council ignored laws and regulations meant to ensure fair process regarding property development conflicts and deprived them of their right to due process. "Due process principles require reasonable notice and opportunity to be heard before governmental deprivation of

a significant property interest." (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134].) The Subdivision Map Act (§ 66410 et seq.) mandates rejection of a subdivision plan if it is deemed unsuitable in terms of topography, density, public health and access rights, or community land use plans. (24 Cal.3d at pp. 614-615; §§ 66473-66474.) Other landowners are entitled to a reasonable notice and an opportunity to be heard whenever approval of a tentative subdivision map will constitute a substantial or significant deprivation of their property rights. (24 Cal.3d at p. 616.)

*The Brown Act.*

■ Appellants assert, and the trial court found, that the Council violated provisions of the Brown Act (§ 54950 et seq.) by "amending" the agenda at the meeting to consider an appeal from the planning commission's approval of appellants' project. A major objective of the Brown Act is to facilitate public participation in all phases of local government decisionmaking and to curb misuse of democratic process by secret legislation by public bodies. (*Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 50 [69 Cal.Rptr. 480].) Section 54954.2, subdivision (a), requires that an agenda be posted at least 72 hours before a regular meeting and forbids action on any item not on that agenda.

The City contends that the Council was justified in adding the appeal to the agenda under section 54954.2, subdivision (b)(2), which authorizes the legislative body to take action on items of business not appearing on the posted agenda where it determines by a "two-thirds vote of the legislative body, or, if less than two-thirds of the members are present, a unanimous vote of those members present, that the need to take action arose subsequent to the agenda being posted as specified in subdivision (a)."[2] However, we agree with the trial court that no "urgency" exemption existed. The Council was informed before July 3 that unless someone appealed, no appeal other than the issue of the oak tree permit would come before the Council. Respondents assert that the Council's decision to add the appeal to the agenda was the result of the need to respond to a request by the residents occurring at the meeting. However, the mayor told the Council on July 7 that there had been "tremendous public input" about the Cohan property over a 10-year period, leading to past downzoning and changes in requests to the developers. The appearance of a large number of interested citizens at the Council meeting, many of whom had appeared at the planning commission

[2]This section has been amended to read, in pertinent part, "that there is a need to take immediate action and that the need for action came to the attention of the local agency subsequent to the agenda being posted as specified in subdivision (a)." (Stats. 1993, ch. 1137, § 8, operative Apr. 1, 1994.)

hearing, was not a subsequently arising need to authorize an action to be taken. The Government Code does not include in its definition of "emergency situation" a legislative body's wanting to ensure an unpopular planning commission decision is appealed. (See §§ 54954.2, subd. (b)(1), 54956.5.) No other statutory exception to the 72-hour rule applied.

■ Nonetheless, violations of the Brown Act do not invalidate a decision. (*Griffis* v. *County of Mono* (1985) 163 Cal.App.3d 414, 427, fn. 15 [209 Cal.Rptr. 519].) Appellants must show prejudice.

Appellants assert that had citizens in support of the project known that the subject of appeal would be on the agenda, they could have attended to dissuade the Council from deciding to appeal. However, the hearing on the appeal was duly noticed and only a few persons showed support for the project in comparison to the large number of opponents. It is highly unlikely more persons would have attended the July 7 meeting to dissuade the Council from considering whether to appeal the decision than appeared to support the project on the merits. Moreover, there is no statute or municipal code that provides a right to attempt to dissuade someone from filing an appeal. (Cf. *Sounhein* v. *City of San Dimas* (1992) 11 Cal.App.4th 1255 [14 Cal.Rptr.2d 656], in which the city failed to give requisite public notice and to hold required public hearings prior to enactment of a zoning ordinance.)

*Lack of Written Notice and Fee.*

■ The Thousand Oaks Municipal Code requires that any appeal of a planning commission decision be in writing and accompanied by a specified fee. (Thousand Oaks Mun. Code, §§ 1-4.01, 9-4.2807.) Failure to pay a fee does not divest the Council of jurisdiction to hear the appeal. (See *Mack* v. *Ironside* (1973) 35 Cal.App.3d 127, 129-130 [110 Cal.Rptr. 557].) The more difficult question is whether appellants were denied due process for lack of adequate notice and whether the Council, or members thereof, could appeal the planning commission's decision.

Section 65094 requires that a notice of a public hearing include the date, time and place of a public hearing, the identity of the hearing body or officer, a general explanation of the matter to be considered, and a general description, in text or by diagram, of the location of the real property that is subject to the hearing. There is no statutory requirement that a list of grounds be provided in the notice of appeal from a land use decision. The Thousand Oaks Municipal Code, however, does require that "the appellant shall show cause on the grounds specified in the notice of appeal why the action appealed from should not be approved." (Thousand Oaks Mun. Code, § 1-4.04.) Thus, here the Council as the "appellant" was required to show cause why the planning commission's action should be overturned.

Respondents argue that Albert Cohan was present at the July 7 meeting but raised no concerns about the absence of reasons for the appeal. However, Albert Cohan was only one of the applicants. Concerns voiced at the July 7 meeting about "density" and "environmental effect" of the project were vague and nonspecific. Appellants' attorney wrote a letter objecting to the Council's placing the matter on the agenda in violation of the Brown Act. (Compare *Mack* v. *Ironside, supra,* 35 Cal.App.3d 127, 131, in which counsel did not protest the manner of appeal.) Respondents point out that at a public hearing after notice, the Council is not bound by findings of the planning commission and may hear the matter de novo and make its own determination on any relevant testimony or documents produced before it. (*Lagrutta* v. *City Council* (1970) 9 Cal.App.3d 890, 895 [96 Cal.Rptr. 627]; § 66452.5, subd. (d).)

Such a de novo hearing, they assert, renders any statement of the grounds for the appeal unnecessary and makes the placing of the burden of presenting evidence on appellant meaningless because, under the Thousand Oaks ordinance, the Council may "sustain, reject, or overrule, wholly or partly, any decision" of the planning commission. (Thousand Oaks Mun. Code, § 9-4.2807(e).) Nonetheless, we presume that the City's ordinance requiring that the notice of appeal contain a statement of grounds was enacted for a purpose. The notice gives direction to both the adjudicatory body that has to decide the issues and those who may have to respond to the challenges to the ruling appealed. ■ "[T]he right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . ." (*Carey* v. *Piphus* (1978) 435 U.S. 247, 266 [55 L.Ed.2d 252, 266, 98 S.Ct. 1042].) ■ The Cohans had submitted, and the planning commission approved, at least six separate applications, asking for such varied approvals as a subdivision lot map, development allotments, and two oak tree permits. As applicants, they had a right to know what they needed to prove to satisfy their burden of proof at the hearing on the appeal.

Since the "appellant" (Council) at the hearing did not specify exactly what action it was asking the Council (as decisionmaker) to take, as required under the municipal code, the hearing became somewhat of a free-for-all with concerns voiced whether *any* commercial development should be allowed. Although 20 minutes might have been sufficient to respond to specific issues with advance notice, Albert Cohan was forced to respond to wide-ranging concerns in an impromptu fashion. (Compare *Reed* v. *California Coastal Zone Conservation Com.* (1975) 55 Cal.App.3d 889, 895-896 [127 Cal.Rptr. 786], in which the court held that a 10-minute limit on oral argument on a land-use permit before the coastal commission was not a denial of due process to the applicant.)

■ The trial court found that the Council as a body was not entitled to bring an appeal to itself. Thousand Oaks Municipal Code section 9-4.2807

lists persons and groups who may appeal: "an appeal . . . may be taken by the applicant, any person aggrieved, or by any officer, department, board, or commission of the City affected by the decision." Thousand Oaks Municipal Code section 1-3.13(n) defines "person" as "any person, firm, company, corporation, partnership, association, any public corporation, political subdivision, city (excepting the City of Thousand Oaks), the County of Ventura, district in the County of Ventura, the State of California, or the United States of America, or any department or agency of any thereof, unless this Code expressly provides otherwise." The court opined that since the definition of person includes departments and agencies but not the City itself, the Council as a body is not entitled to bring an appeal to itself.

Respondents argue that the more specific provisions of title 9 of the Thousand Oaks Municipal Code pertain to planning and zoning provisions. Thousand Oaks Municipal Code section 9-4.2807(a) applies to appeals of residential planned development permits and commercial development permits and allows appeals by officers of the City. Council members are "governing officers" of the City. (§ 36501, subd. (a).) Moreover, "[t]he council is composed of five *persons,* and acting collectively, they may do what any one of them may do as an individual." (*Mack* v. *Ironside, supra,* 35 Cal.App.3d 127, 129.)

Additionally, Thousand Oaks Municipal Code section 9-3.702 states that any "interested person adversely affected by a decision may appeal the decision of the Planning Commission to the Council." Respondents argue that the section is consistent with the language of the Subdivision Map Act (§ 66452.5, subd. (d)), which states "[a]ny interested person adversely affected" may appeal. Land use decisions that affect property rights of adjacent landowners require procedural due process for the adjacent landowners as well as for the applicants. (*Horn* v. *County of Ventura, supra,* 24 Cal.3d 605, 615-616.)[3] Consequently, respondents conclude that the Council did not lack jurisdiction to hear the appeal since it may well have precluded another "person" from initiating an appeal by its decision (*Mack* v. *Ironside, supra,* 35 Cal.App.3d 127, 131), nor was its decision to appeal the planning commission's decision null and void.

The problem which respondents refuse to accept is that the Council acted in an arbitrary and high-handed manner. The Council ignored procedural due process and claims "no harm, no foul" because there was a hearing. True, a councilperson has a right to state views or concerns on matters of community policy without having his vote impeached. (*City of Fairfield* v. *Superior*

---

[3]See 73 Ops.Cal.Atty.Gen. 338, 343 (1990), which states that the advisory agency must be allowed to appeal the determination to approve, conditionally approve, or disapprove a parcel or tentative map of a proposed subdivision to the governing body of the city.

*Court* (1975) 14 Cal.3d 768, 772 [122 Cal.Rptr. 543, 537 P.2d 375].) Additionally, opposition of neighbors to a development project is a legitimate factor in legislative decisionmaking. (See, e.g., *Harris* v. *City of Costa Mesa* (1994) 25 Cal.App.4th 963, 973-974 [31 Cal.Rptr.2d 1]; *Nelson* v. *City of Selma* (9th Cir. 1989) 881 F.2d 836, 839.)

We agree that a trier of fact does not have to be completely indifferent to the general subject matter of the claim presented to be impartial. (*Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 790 [171 Cal.Rptr. 590, 623 P.2d 151].) Nonetheless, " '[a] "fair trial in a fair tribunal is a basic requirement of due process." . . .' " (*Bullock* v. *City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1091 [271 Cal.Rptr. 44].) A biased decisionmaker is constitutionally unacceptable. (*Ibid.*) "The right to a fair procedure includes the right to impartial adjudicators." (*Rosenblit* v. *Superior Court* (1991) 231 Cal.App.3d 1434, 1448 [282 Cal.Rptr. 819].)

Here, the Council, in its zeal, made sure the decision did not stand unchallenged. An interested citizen could have timely filed an appeal had the Council indicated that it could not do so on its own motion at the July 7 meeting. There was at least the appearance of conflict of interest in the proceedings, due to violation of the City's own ordinances. Whether or not an appeal would have been filed by an interested person is pure speculation.

Our holding should not be read as invalidating all appeals taken by a city council or other governing body to itself from a decision of a subordinate agency. We *do* emphasize, however, that if such a procedure is contemplated, it should be authorized by the ordinances or rules which govern appeals to such entity, and some direction should be given in such ordinances or rules concerning specification of grounds and appropriate burdens of proof. No elected individual appealed here. The *Council* appealed. Had a single council member been the appellant (and complied with the municipal code), he or she might have been disqualified but the remainder of the City Council could have voted.

### 3. *Cumulative Procedural Errors Impaired Adequacy of Hearing*

 Appellants assert that the July 28 hearing during which the Council granted its own appeal did not afford appellants their right to a meaningful hearing. They reiterate their assertion that lack of notice of grounds for appeal prevented their adequately responding to them. The trial court noted that many hours of comments by interested citizens, by appellants, by the City planning officials and by the Council members resulted in the ultimate decision to deny the application for the project. The court found that "after having reviewed the entirety of the public comment that there is adequate evidence to support a finding by the Council that adequate cause had been

shown regarding density, concern for the wetlands and flood basin, suitability to the community, traffic patterns and other concerns to support their finding that the application should be denied. The court finds that at that hearing applicant had adequate opportunity to be fully heard."

Simply because Albert Cohan was familiar with the objections to the project does not satisfy due process. The Council ignored the very laws and regulations meant to ensure fair process concerning property development conflicts. Ironically, the Council's very attempt to protect the due process rights of interested citizens cavalierly overrode those same rights of the Cohans. This stands due process on its head.

### 4. Council's Resolution Untimely

■ Appellants assert that the Council did not make any findings at the July 28 hearing and that no formal resolution was adopted until September 15, 1992. They contend that the Council violated both the Subdivision Map Act and the Thousand Oaks Municipal Code by their inaction. Section 66452.5, subdivision (d), provides in pertinent part that "[u]pon conclusion of the hearing, the governing body shall, within seven days, declare its findings based upon the testimony and documents produced before it or before the advisory board or the appeal board. It may sustain, modify, reject, or overrule any recommendations or rulings of the advisory board or the appeal board and may make any findings which are not inconsistent with the provisions of this chapter or local ordinance adopted pursuant to this chapter."

Respondents assert that the Council did state the basis of its decision, albeit not in written form, at the hearing when it voted to grant the appeal to deny the project without prejudice and that review of the discussion of the members of the Council provides a basis which supports the later written findings. According to respondents, nothing in section 66452.5, subdivision (d) requires that the findings be in written form or contained in a resolution.

Respondents further argue that the California Supreme Court has held that, generally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed (*Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365]) and that appellants can show no prejudice (aside from further aggravation) from the delay in the filing of written findings in the resolutions. Appellants filed their petition for writ of mandate prior to the filing of the resolutions. As the trial court noted, all the court could do at that point was to order the Council to file its findings, which it already had done.

The trial court also determined that Thousand Oaks Municipal Code section 9-4.2807, which provides that the Council shall announce its decision by resolution not more than 14 calendar days after the hearing, was

directory rather than jurisdictional. In a similar scenario, *Anderson* v. *Pittenger* (1961) 197 Cal.App.2d 188 [17 Cal.Rptr. 54], held that an ordinance which provided that the council shall announce its decision by resolution not more than 30 days following the closing of the hearing was directory and that the council did not lose jurisdiction by failing to determine the matter within the 30-day period. (At p. 194.) *Edwards* v. *Steele, supra*, 25 Cal.3d 406, 410, cited *Anderson* v. *Pittenger* with approval for the proposition that generally requirements relating to the time within which an act must be done are directory rather than mandatory.

We agree with the trial court that the seven-day time limit of section 66452.5, subdivision (d), and the fourteen-calendar-day limit of Thousand Oaks Municipal Code section 9-4.2807 are directory. The Council did not "fail" to act on the matter or to reach a decision. However, the Council's failure to file written findings in resolutions until after appellants filed their petition for writ of mandate is one more example of the cavalier manner in which the City has disregarded appellants' due process rights. As real estate developers, appellants took the risk that their proposed project may not be approved or, if approved, may be severely conditioned. They may even incur the risk of a seemingly unfair decision. However, they should not be subjected to the blatant disregard of their due process rights. The Council simply submitted to the roar of the crowd.

While a single procedural error might have caused appellants no prejudice, the cumulative effect of Council's actions resulted in a violation of appellants' substantive and procedural due process rights. The trial court's conclusion that someone else would have appealed had the Council not done so is speculative and unsupported by the record.

We grant appellants' writ of mandate. Let a writ issue directing the trial court to reverse its May 28, 1993, ruling and to enter a new order nullifying the Council's appeal to itself.

Costs to appellants.

Gilbert, J., and Yegan J., concurred.

A petition for a rehearing was denied December 21, 1994, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied February 23, 1995.